**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, and<br>TONI THERESA SPERA FLANIGAN | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | Civil Action No. |
| v. | ) | 3:22 CV 1118 |
| | ) | |
| NED LAMONT, is his official capacity as the Governor | ) | |
| of the State of Connecticut; | ) | |
| PATRICK J. GRIFFIN, is his official capacity as the | ) | |
| Chief State's Attorney of the State of Connecticut; and | ) | |
| SHARMESE L. WALCOTT, in her official capacity as | ) | |
| the State's Attorney, Hartford Judicial District, | ) | |
| | ) | |
|     Defendants. | ) | September 13, 2022 |

**SECOND AMENDED
COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
AS OF RIGHT**

**I.  PARTIES**

1.    Plaintiff National Association for Gun Rights ("NAGR") is a nonprofit

membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. §

501(c)(4).  NAGR seeks to defend the right of all law-abiding individuals to keep and bear arms.

NAGR has members who reside within the State of Connecticut (the "State").  NAGR represents

the interests of its members who reside in the State. Specifically, NAGR represents the interests

of those who are affected by State's prohibition of commonly used firearms and magazines.  In

addition to their standing as citizens and taxpayers, those members' interests include their

intention to exercise their constitutionally protected right to acquire, keep and bear arms, and

specifically the arms and components that are currently prohibited, without being subjected to

criminal prosecution.  This litigation and the interests that NAGR seeks to vindicate and protect

- 1 -

in this litigation, are germane to, and within a core purpose of, NAGR and its mission.  NAGR members have a present intention to seek to acquire, keep, possess and/or transfer lawful arms for self-defense and other lawful purposes, which are prohibited by the challenged firearm and component restrictions.  For purposes of this Complaint, the term "Plaintiffs" is meant to include NAGR in its capacity as a representative of its members.

2.      NAGR has expended and diverted resources otherwise reserved for different institutional functions and purposes and is adversely and directly harmed by the illegal and unconstitutional actions of the Defendants. NAGR has diverted, and continues to divert, significant time, money, effort, and resources to addressing the Defendants' unconstitutional enforcement of the laws complained of herein that would otherwise be used for educational outreach, public relations, and/or programmatic purposes. Among other diversions and threatened diversions, the Defendants' unconstitutional enforcement of the laws complained of herein has forced, or likely will force, NAGR to divert funds, energies, and resources to the cause of this legal action. Rather than working on other educational, outreach, public relations, and/or programmatic events and operations, NAGR's agents have devoted, are continuing to devote, or are likely to devote, significant time, money, effort, and resources to addressing the Defendants' unconstitutional enforcement of the laws complained of herein. NAGR and its agents will be forced to continue diverting such time, money, effort, and resources from NAGR's normal educational, outreach, public relations, and/or programmatic events and operations so long as the Defendants' unconstitutional enforcement of the laws complained of herein persists. As to NAGR's representative capacity claims, there are common questions of law that substantially affect the rights, duties and liabilities of many of NAGR's members as well as

potentially numerous similarly situated residents whose constitutional rights have been, and are continuing to be, infringed by the Defendants' unconstitutional enforcement of the laws complained of herein. The interests NAGR seeks to protect are germane to its purpose.

3.      Plaintiff Toni Theresa Spera Flanigan is a resident of Connecticut and is a law-abiding citizen of the United States.  She is a member of NAGR.  She intends to acquire arms putatively made illegal by the Statutes and but for the Statutes would do so.

4.      The individual plaintiff and members of plaintiff NAGR are eligible under the laws of the United States and, but for the Statutes, of the State of Connecticut to receive and possess firearms, including pistols, rifles, and shotguns, with the exception of the Statutes.

5.      Defendant Ned Lamont is the Governor of Connecticut.  His principal place of business is in Hartford (Hartford County), Connecticut.  Defendant Lamont is required to "take care that the laws be faithfully executed." CONN. CONST., Article IV, § 12.

6.      Defendant Patrick J. Griffin is the Chief State's Attorney for the State of Connecticut.  His principal place of business is in Rocky Hill (Hartford County), Connecticut. Pursuant to Article XXIII of the Connecticut Constitution, "[t]he prosecutorial power of the state shall be vested in a chief state's attorney and the state's attorney for each judicial district."  As Chief State State's Attorney for the State of Connecticut, Defendant Griffin is the "chief of the division of criminal justice." CONN. GEN. STAT. § 51-275. The division is responsible for prosecuting all crimes and offenses against the laws of the state. CONN. GEN. STAT. § 51-277(b). The Chief State's Attorney may sign any warrants, informations, and applications for grand jury investigations; may in certain circumstances appear in court to represent the state or represent the state in lieu of a state's attorney for a judicial district; and shall participate on behalf of the state

- 3 -

in all appellate, post-trial and post-conviction proceedings arising out of the initiation of any criminal action.  CONN. GEN. STAT. §§ 51-277(c), (d). These prosecutorial activities include commencement of criminal actions against those individuals and/or entities accused of violating the Statutes.  Further, under CONN. GEN. STAT. § 51-281, "[t]he Chief State's Attorney … shall be qualified to act in any judicial district in the state and in connection with any matter regardless of the judicial district where the offense took place, and may be assigned to act in any judicial district at any time on designation by the Chief State's Attorney or the Inspector General, as applicable."

7.      Defendant Sharmese L. Walcott is the State's Attorney, Hartford Judicial District, which encompasses the district where Plaintiff Flanigan resides.  Pursuant to Article XXIII of the Connecticut Constitution, "[t]he prosecutorial power of the state shall be vested in a chief state's attorney and the state's attorney for each judicial district."    Further, under CONN. GEN. STAT. § 51-281, "[t]he … State's Attorney … shall be qualified to act in any judicial district in the state and in connection with any matter regardless of the judicial district where the offense took place…."  And, under CONN. GEN. STAT. § 51-286a, "[e]ach state's attorney… shall diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court or in which the court may proceed, whether committed before or after his appointment to office."

8.      Defendants are, have, and/or will enforce the unconstitutional provisions of the Statutes against Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983.

### III.  JURISDICTION AND VENUE

9.      The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States.  The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, ordinances, regulations, customs and usages of the State, of rights, privileges or immunities secured by the United States.

10.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

11.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

### IV.  GENERAL ALLEGATIONS

12.     The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed."  U.S. CONST. Amend. II; *see also D.C. v. Heller*, 554 U.S. 570 (2008) ("*Heller*"); *McDonald v. City of Chicago*, 561 U.S. 742 (2010) ("*McDonald*"); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ("*Bruen*").

13.     The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment.  *McDonald, supra*.

14.     This action challenges the constitutionality of CONN. GEN. Stat. § 53-202c(a) and CONN. GEN. STAT. § 53-202w(b) and (c) (collectively, the "Statutes").

15.     CONN. GEN. STAT. § 53-202a(1) defines the term "assault weapon."

16.     The term "assault weapon" as used in the Statutes is not a technical term used in the firearms industry or community for firearms commonly available to civilians.  Instead, the term is a rhetorically charged political term meant to stir the emotions of the public against those persons who choose to exercise their constitutional right to possess certain semi-automatic firearms that are commonly owned by millions of law-abiding American citizens for lawful purposes.  Plaintiffs refuse to adopt State's politically charged rhetoric in this Complaint. Therefore, for purposes of this Complaint, the term "Banned Firearm" shall have the same meaning as the term "assault weapon" in CONN. GEN. STAT. § 53-202a(1).

17.     CONN. GEN. Stat. § 53-202c(a) providers that any person within the State who possesses a Banned Firearm shall be guilty of a class D felony.

18.     Plaintiffs and/or their members have the present intention, and seek to acquire, keep, possess and/or transfer the Banned Firearms for self-defense in the home and other lawful purposes.

19.     The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes.  *Heller*, *supra*, at 627.

20.     There is a venerable tradition in this country of lawful private ownership of semiautomatic rifles such as those banned by the Statutes.  The Supreme Court has held as much. In *Staples v. United States*, 511 U.S. 600 (1994), the Court noted that semiautomatics, unlike machine guns, "traditionally have been widely accepted as lawful possessions. " *Id*., 511 U.S. 611-12 (identifying the AR-15 – the archetypal "assault weapon" – as a traditionally lawful

firearm).  The vast majority of States do not ban they type of semiautomatic rifles deemed

"assault weapons" in the Statutes.

21.     Millions of law-abiding citizens choose to possess firearms such as the Banned

Firearms. *Duncan v. Becerra ("Duncan IV)"*, 970 F.3d 1133, 1147 (9th Cir. 2020) [1]

("Commonality is determined largely by statistics."); *Ass 'n of N.J Rifle & Pistol Clubs, Inc. v.*

*Att '.Y Gen*., 910 F.3d 106, 116 (3d Cir. 2018) (finding an "arm" is commonly owned because

"[t]he record shows that millions . . . are owned"); *New York State Rifle & Pistol Ass 'n, Inc. v.*

*Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("Even accepting the most conservative estimates cited

by the parties and by amici, the assault weapons . . . at issue are 'in common use' as that term

was used in *Heller*."); *Heller v. D.C. ("Heller II")*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We

think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use.' ").

This is demonstrated by the AR-15 and other modem semiautomatic rifles, which epitomize the

firearms that the State bans.

22.     The AR-15, as just one example among many of a Banned Firearm, is America's

"most popular semi-automatic rifle," *Heller II*, 670 F.3d at 1287 (Kavanaugh, J., dissenting), and

in recent years it has been "the best-selling rifle type in the United States," Nicholas J. Johnson,

*Supply Restrictions at the Margins of Heller and the Abortion Analogue*, 60 HASTINGS L.J. 1285,

1296 (2009). Already in early 2013, sources estimated that there were five million AR- 15s in

private hands. Dan Haar, *America's Rifle: Rise of the AR-15*, HARTFORD COURANT (Mar. 9,

---

[1] , *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and *on reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

2013), https://bit.ly/3whtDTj (last visited August 25, 2022); *see also Duncan v. Becerra*

*("Duncan III")*, 366 F. Supp. 3d 1131, 1145 (S.D. Cal. 2019).[2]

    23.    Millions of law-abiding citizens own and use for lawful purposes semi-automatic

firearms such as the Banned Firearms currently possessed by Plaintiffs.  The Statutes'

prohibition on the possession, sale, or other transfer of the Banned Firearms possessed by

Plaintiffs and/or their members violates the Second Amendment.

    24.    CONN. GEN. STAT. § 53-202w(a)(1) defines the term "large-capacity magazine" to

mean any firearm magazine capable of holding more than ten rounds of ammunition.

    25.    The Statutes again uses politically charged rhetoric to describe the arms it bans.

The Statutes' characterization of these magazines as "large capacity" is a misnomer.  Magazines

capable of holding more than 10 rounds are standard capacity magazines.  Plaintiffs refuse to

adopt the State's politically charged rhetoric in this Complaint.  Therefore, for purposes of this

Complaint, the term "Banned Magazine" shall have the same meaning as the term "large-

capacity magazine" in CONN. GEN. STAT. § 53-202w(a)(1).

    26.    CONN. GEN. STAT. § 53-202w(b) and (c) generally state that any person who

within the State, possesses, distributes, imports, keeps for sale, offers or exposes for sale,

transfers, or purchases a Banned Magazine shall be guilty of a class D felony.

    27.    Magazines are indisputably "arms" protected by the Second Amendment, as the

right to keep and bear arms necessarily includes the right to keep and bear components such as

ammunition and magazines that are necessary for the firearm to operate. *See United States v.*

---

[2] *aff'd*, 970 F.3d 1133 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and on *reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022), and *rev'd and remanded sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), and *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

*Miller*, 307 U.S. 174, 180 (1939) (citing seventeenth century commentary recognizing that "[t]he possession of arms also implied the possession of ammunition"); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("[W]ithout bullets, the right to bear arms would be meaningless").

28.     The magazines the State has banned unquestionably satisfy the "common use" test. *Duncan III,* 366 F. Supp. 3d at 1143-45; *Duncan IV*, 970 F.3d at 1146-47.

29.     In *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017), *abrogated by Bruen*, *supra*, Judge Traxler (whose dissenting opinion almost certainly accurately states the law post *Bruen*) stated:

> The record also shows unequivocally that magazines with a capacity of greater than 10 rounds are commonly kept by American citizens, as there are more than 75 million such magazines owned by them in the United States.  These magazines are so common that they are standard on many firearms: On a nationwide basis most pistols are manufactured with magazines holding ten to 17 rounds.  Even more than 20 years ago, fully 18 percent of all firearms owned by civilians were equipped with magazines holding more than ten rounds."

*Id.*, 849 F.3d at 154, Traxler, J. dissenting (internal citations and quotation marks omitted).

30.     Magazines capable of holding more than 10 rounds of ammunition are commonly owned by millions and millions of Americans for all manner of lawful purposes, including self-defense, sporting, and hunting. They come standard with many of the most popular handguns and long guns on the market, and Americans own roughly 115 million of them, *Duncan IV*, 970 F.3d at 1142, accounting for "approximately half of all privately owned magazines in the United States," *Duncan v. Bonta*, 19 F.4th 1087, 1097 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022).  Indeed, the most popular handgun in America, the Glock 17 pistol, comes standard with a 17-round magazine. *See Duncan III*, 366 F.Supp.3d at 1145.

- 9 -

31.     There can be no serious dispute that magazines capable of holding more than 10 rounds are bearable arms that satisfy the common use test and thus are presumptively protected by the Second Amendment.  Law-abiding citizens own over 100 million magazines such as the Banned Magazines.  The Statutes' prohibition on the possession, sale, or other transfer of the Banned Magazines owned by Plaintiffs and/or their members violates the Second Amendment.

32.     The Second Amendment's plain text covers the Banned Firearms and the Banned Magazines.  It therefore falls to the Defendants to justify its regulation as consistent with historical tradition rooted in the Founding. This they cannot possibly do so, because *Bruen* has already established that there is no tradition of banning commonly possessed arms, such as the Banned Firearms and the Banned Magazines.

33.     In the post-*Bruen* decision of *Rocky Mountain Gun Owners v. The Town of Superior*, Case No. 22-cv-1685 (July 22, 2022), the court entered an order in which it restrained enforcement of certain provisions of a Town of Superior, Colorado ordinance that banned semiautomatic weapons and magazine with a capacity greater than ten rounds.  The court held there was a strong likelihood that the plaintiffs in that case would prevail on the merits of their constitutional challenge to the ordinance provisions.  The restrained ordinance is substantially identical to the statutory provisions challenged in this action.

34.     There is an actual and present controversy between the parties.  The Statutes infringe on Plaintiffs' right to keep and bear arms under the Second Amendment by generally prohibiting the possession of arms that are commonly possessed by millions of Americans for lawful purposes and Defendants continue to enforce the Statutes.  Plaintiffs desire a judicial declaration that the Statutes sections identified above, facially and/or as applied to them, violate

their constitutional rights.  Plaintiffs should not be forced to choose between risking criminal

prosecution and exercising their constitutional rights.  This is true even if certain provisions of

the Statutes provide affirmative defenses to criminal prosecution.  The risk of criminal

prosecution on account of exercising a constitutionally protected right unlawfully chills the

exercise of that right and thus violates the Constitution even if the criminal defendant ultimately

prevails.

35.     Plaintiffs are and will continue to be injured by Defendants' enforcement of the

Statutes sections identified above insofar as those provisions violate Plaintiffs' rights under the

Second Amendment by precluding the acquisition, possession, transfer and use of arms that are

"typically possessed by law-abiding citizens for lawful purposes" nationwide.  If not enjoined by

this Court, Defendants will enforce the Statutes in derogation of Plaintiffs' constitutional rights.

Plaintiffs have no plain, speedy, and adequate remedy at law.  Damages are indeterminate or

unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs

because they are unable to engage in constitutionally protected activity due to Defendants'

present or contemplated enforcement of these provisions.

### V. FIRST CLAIM FOR RELIEF
**Right to Keep and Bear Arms**
**U.S. Const., amends. II and XIV**

36.     Paragraphs 1 through 35 are realleged and incorporated by reference.

37.     The Statutes bans firearms and firearm magazines that are "typically possessed by

law-abiding citizens for lawful purposes" nationwide.  The Statutes, therefore, generally prohibit

residents of State, including Plaintiffs, from acquiring, keeping, possessing, and/or transferring

- 11 -

arms protected by the Second Amendment.  There are significant penalties for violations of the Statutes.

38.     These restrictions infringe on the right of the people of the State, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment and made applicable to the states and its political subdivisions by the Fourteenth Amendment.

39.     The Statutes' prohibitions extend into Plaintiffs' homes, where Second Amendment protections are at their zenith.

40.     Defendants cannot satisfy their burden of justifying these restrictions on the Second Amendment right of the People, including Plaintiffs, to bear, acquire, keep, possess, transfer, and use arms that are in common use by law-abiding adults throughout the United States for the core right of self-defense in the home and other lawful purposes.

## PRAYER FOR RELIEF

Plaintiffs pray that the Court:

1. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Statutes sections identified herein are unconstitutional on their face or as applied to the extent their prohibitions apply to law-abiding adults seeking to acquire, use, transfer, or possess arms that are in common use by the American public for lawful purposes;

2. Enter preliminary and permanent prospective injunctive relief enjoining Defendant and its officers, agents, and employees from enforcing the unconstitutional Statutes sections identified above;

3. Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law; and

4. Grant any such other and further relief as the Court may deem proper.

THE PLAINTIFFS
NATIONAL ASSOCIATION FOR
GUN RIGHTS, and TONI
THERESA SPERA FLANIGAN

*/s/ Barry K. Arrignton*
Barry K. Arrington
3801 E. Florida Ave., Suite 830
Denver, CO 80210
(303) 205-7870
barry@arringtonpc.com
*Pro Hac Vice*

John J. Radshaw (ct19882)
65 Trumbull Street, 2d Floor
New Haven, CT 06510
(203) 654-9695 Office
(203) 721-6182 Facsimile
jjr@jjr-esq.com