UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR GUN | : | CIVIL NO. 3:22-CV-01118(JBA) |
| RIGHTS, ET. AL. | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| NED LAMONT, ET AL., | : | NOVEMBER 18, 2022 |
| *Defendant.* | | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF<br>DEFENDANTS' MOTION TO DISMISS</u>

Defendants move, pursuant to Fed. R. Civ. Pro. 12(b)(1), to dismiss the organizational

Plaintiff—National Association for Gun Rights. ("NAGR")—from this case because it lacks

standing.  Therefore, this Court lacks subject matter jurisdiction over this Plaintiff and its claims

and must dismiss them from this case.

## I.    BACKGROUND

Plaintiffs, NAGR and Toni Theresa Spera Flanigan, bring this action pursuant to 42 U.S.C.

§ 1983.  (Doc. #26 at 1, 3-5, ¶¶1, 3, 8, 9.)  Plaintiffs challenge "the constitutionality of CONN.

GEN. Stat. § 53-202c(a) and CONN. GEN. STAT. § 53-202w(b) and (c)  (Doc. #26 at 5, ¶14.)

Plaintiffs seek declaratory and injunctive relief and "remedies available under 42 U.S.C. § 1983

and all reasonable attorneys' fees, costs, and expenses. . ."  (Doc. #26 at 13, ¶¶1-3.)

NAGR describes itself as "a nonprofit membership and donor-supported organization" that

"seeks to defend the right of all law-abiding individuals to keep and bear arms."  (Doc. #26 at 1,

¶1.)  NAGR claims it "has members who reside within the State of Connecticut" and "represents

the interests of its members who reside in the State."  (Id.)  NAGR claims to represent "the interests

of those who are affected by [Connecticut's alleged] prohibition of commonly used firearms and

magazines." (Id.) As for standing, NAGR alleges:

> In addition to their standing as citizens and taxpayers, those members' interests
> include their intention to exercise their constitutionally protected right to acquire,
> keep and bear arms, and specifically the arms and components that are currently
> prohibited, without being subjected to criminal prosecution. This litigation and the
> interests that NAGR seeks to vindicate and protect in this litigation, are germane
> to, and within a core purpose of, NAGR and its mission. NAGR members have a
> present intention to seek to acquire, keep, possess and/or transfer lawful arms for
> self-defense and other lawful purposes, which are prohibited by the challenged
> firearm and component restrictions. For purposes of this Complaint, the term
> "Plaintiffs" is meant to include NAGR in its capacity as a representative of its
> members."

(Doc. #26 at 1-2, ¶1.)

> In addition to the injuries allegedly suffered by its members, NAGR claims it:

> has expended and diverted resources otherwise reserved for different institutional
> functions and purposes and is adversely and directly harmed by the illegal and
> unconstitutional actions of the Defendants. NAGR has diverted, and continues to
> divert, significant time, money, effort, and resources to addressing the Defendants'
> unconstitutional enforcement of the laws complained of herein that would
> otherwise be used for educational outreach, public relations, and/or programmatic
> purposes. Among other diversions and threatened diversions, the Defendants'
> unconstitutional enforcement of the laws complained of herein has forced, or likely
> will force, NAGR to divert funds, energies, and resources to the cause of this legal
> action. Rather than working on other educational, outreach, public relations, and/or
> programmatic events and operations, NAGR's agents have devoted, are continuing
> to devote, or are likely to devote, significant time, money, effort, and resources to
> addressing the Defendants' unconstitutional enforcement of the laws complained
> of herein. NAGR and its agents will be forced to continue diverting such time,
> money, effort, and resources from NAGR's normal educational, outreach, public
> relations, and/or programmatic events and operations so long as the Defendants'
> unconstitutional enforcement of the laws complained of herein persists. As to
> NAGR's representative capacity claims, there are common questions of law that
> substantially affect the rights, duties and liabilities of many of NAGR's members
> as well as potentially numerous similarly situated residents whose constitutional
> rights have been, and are continuing to be, infringed by the Defendants'
> unconstitutional enforcement of the laws complained of herein. The interests
> NAGR seeks to protect are germane to its purpose.

(Doc. #26 at 2-3, ¶2.)  Paragraphs 1-2 of the Second Amended Complaint contain the entirety of the allegations related to NAGR's alleged standing in this case.

## II.    ARGUMENT AND APPLICABLE LAW

### A.    Standard of Review.

Because "[t]he exercise of judicial power . . . can so profoundly affect the lives, liberty, and property of those to whom it extends. . . the decision to seek review must be placed in the hands of those who have a direct stake in the outcome." *Diamond v. Charles*, 476 U.S. 54, 62, (1986) (internal quotation marks omitted).  "It is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.'" *Id*. (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when the plaintiff lacks constitutional standing to bring the action." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021) (quotation omitted); *see also Beaupre v. Chubb & Son, Inc.*, No. 3:19-CV-834 (JBA), 2020 WL 4569990, at *3 (D. Conn. Aug. 7, 2020). "'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quoting *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)).

"Article III standing 'serves to prevent the judicial process from being used to usurp the powers of the political branches.'" *Martinez v. Malloy*, 350 F. Supp. 3d 74, 84 (D. Conn. 2018) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).  "The constitutional standing requirement promotes separation of powers among the different branches of government, the

system of federalism which leaves certain authority to state governments, judicial efficiency, and, finally, fairness by 'ensuring that people will raise only their own rights and concerns' and not those of others who may not completely concur with the litigants." *Juvenile Matters Trial Lawyers Ass'n v. Judicial Dep't*, 363 F. Supp. 2d 239, 244 (D. Conn. 2005) (quotation omitted).  Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Controlled Air, Inc. v. Barr*, No. 3:19-CV-1420 (JBA), 2020 WL 979874, at *4 (D. Conn. Feb. 28, 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  "Whether a claimant has standing is the threshold question in every federal case, determining the power of the Court to entertain the suit." *Id*. (quoting *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 361 (2d Cir. 2003)).

"Determining that a matter before the federal courts is a proper case or controversy under Article III therefore assumes particular importance in ensuring that the Federal Judiciary respects 'the proper—and properly limited—role of the courts in a democratic society.'"  *McNiece v. Connecticut*, No. 3:15-CV-1036 (MPS), 2016 WL 1118249, at *6 (D. Conn. Mar. 22, 2016), *aff'd*, 692 F. App'x. 655 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 334 (2017) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).  "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."  *Id*. (quoting *Allen*, 468 U.S. at 750).  Therefore, "[i]f plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim."  *Id*. (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

"The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact' . . . . Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be likely, as opposed to

merely speculative, that the injury will be redressed by a favorable decision." *Martinez*, 350 F.

Supp. 3d at 84 (quoting *Lujan*, 504 U.S. at 560-61 (citations omitted)).

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all

facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."

*Beaupre*, 2020 WL 4569990, at *3 (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)).

"However, argumentative inferences favorable to the party asserting jurisdiction should not be

drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing

*Norton v. Larney*, 266 U.S. 511, 515 (1925)); *see also Robinson v. Overseas Military Sales Corp.*,

21 F.3d 502, 507 (2d Cir. 1994) ("In determining whether a plaintiff has met this burden, we will

not draw argumentative inferences in the plaintiff's favor").

"In response to a motion to dismiss pursuant to Rule 12(b)(1), '[a] plaintiff asserting subject

matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'"

*Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d. Cir. 2000)); *see also Peterson v.*

*Cont'l Airlines, Inc.*, 970 F. Supp. 246, 249 (S.D.N.Y. 1997) ("Once challenged, the burden of

establishing a federal court's jurisdiction rests with the party asserting jurisdiction."). "[I]t is the

affirmative burden of the party invoking [federal subject matter] jurisdiction... to proffer the

necessary factual predicate-not just an allegation in a complaint-to support jurisdiction." *Juvenile*

*Matters Trial Lawyers Ass'n*, 363 F. Supp. 2d at 243 (quoting *London v. Polishook*, 189 F.3d 196,

199 (2d Cir.1999)).  The Second Circuit has repeatedly observed that, in contrast to a motion to

dismiss for failure to state a claim, 'when the question to be considered is one involving the

jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not

made by drawing from the pleadings inferences favorable to the party asserting it.'" *Rodriguez v.*

*Winski*, 444 F. Supp. 3d 488, 494 (S.D.N.Y. 2020) (quoting *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

> **B.    Organizations attempting to invoke the jurisdiction of the federal courts must meet specific standing requirements.**

Litigants are generally prohibited from "asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *Laquer v. Priceline Grp., Inc.*, 722 F. App'x. 22, 24 (2d Cir. 2018) (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)). "The prudential limitations on jurisdiction require that a plaintiff establish that he or she is the proper proponent of the rights asserted; a litigant may not raise the rights of a third-party, or assert speculative, conjectural or generalized grievances more appropriately resolved by a governmental body, other than the courts." *Am. Psychiatric Assoc. v. Anthem Health Plans*, 50 F. Supp. 3d 157, 162 (D. Conn. 2014), *aff'd sub nom. Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016) (quoting *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1346–47 (2d Cir. 1989)).

"Organizations like [NAGR] may have standing in one of two ways: by establishing so-called 'associational' or 'representational' standing to sue on behalf of its members, or by establishing that it was directly injured as an organization." *Conn. Parents Union*, 8 F.4th at 172 (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Warth*, 422 U.S. at 511). "Under the organizational standing theory, 'an association may have standing in its own right to seek judicial relief to itself and to vindicate whatever rights and immunities the association itself may enjoy.'" *Rodriguez*, 444 F. Supp. 3d at 492 (quoting *Warth*, 422 U.S. at 511). "In contrast, under the associational standing theory, 'an association has standing to bring suit on behalf of its members.'" *Id.* (quoting *Hunt*, 432 U.S. at 343).

**C.      NAGR lacks associational standing because it cannot assert the rights of its members in a case brought under 42 U.S.C. § 1983.**

"The Supreme Court has held that 'an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity.'" *Juvenile Matters Trial Lawyers Ass'n*, 363 F. Supp. 2d at 246–47 (quoting *Hunt*, 432 U.S. 343).   "To do so, '[t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.'" *Id.* (quoting *Warth*, 422 U.S. at 511).   "In other words, an association must demonstrate that: '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Id.* (quoting *Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 649 (2d Cir. 1998)).

However, the Second Circuit has also repeatedly and consistently held that organizations "do not have standing to assert claims under 42 U.S.C. § 1983 on behalf of their members." *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 788 F. App'x 85 (2d Cir. 2019); *see also Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973) ("Neither [the] language nor the history [of § 1983] suggests that an organization may sue under the Civil Rights Act for the violations of rights of members.").   "It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983, as we have 'interpret[ed] the rights [§ 1983] secures to be personal to those purportedly injured.'" *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (quoting *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984)).   Notably, individual panels of the Second Circuit

consistently adhere to this precedent.  *See Nnebe*, 644 F.3d at 156 ("Accordingly, we are bound by the implicit determination of prior panels that the rule survives *Warth* "until such time as [our prior decisions] are overruled either by an *en banc* panel of our Court or by the Supreme Court." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004)).

This Complaint is brought pursuant to 42 U.S.C. § 1983.  (Doc. #26 at 4-5, 13 ¶¶8-9, 3.) NAGR cannot assert the rights of any of its members in a federal civil rights case. *See N.Y. State Citizens Coal. for Child. v. Poole*, 922 F.3d 69, 74-75 (2d Cir. 2019) ("In a string of opinions, this Court has held that organizations suing under Section 1983 must, without relying on their members' injuries, assert that their own injuries are sufficient to satisfy Article III's standing requirements").  Thus, clear Second Circuit precedent bars NAGR from invoking associational standing to bring civil rights claims in this action.

### D.      NAGR lacks organizational standing because its theory of injury is insufficient to constitute an injury-in-fact.

Since NAGR cannot avail itself of associational standing, that leaves it only with organizational standing as a basis for invoking the jurisdiction of this Court.  "To succeed on that theory, it is [NAGR's] burden to satisfy the 'irreducible constitutional minimum of standing' by showing: '(i) an imminent injury in fact to itself as an organization (rather than to its members) that is distinct and palpable; (ii) that its injury is fairly traceable to [the challenged act]; and (iii) that a favorable decision would redress its injuries.'"  *Conn. Parents Union*, 8 F.4th at 172-73 (citing *Lujan*, 504 U.S. at 560; *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017)).

"[A]n organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III."  *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993) (quoting *Simon v. Eastern Ky. Welfare*

*Rights Org.*, 426 U.S. 26, 40 (1976)); *see also Conn. Parents Union*, 8 F.4th at 173 ("abstract social harm" insufficient to constitute organizational standing).

"Moreover, an organization lacks standing to sue in its own right as a result of injuries that are not fairly traceable to the defendant." *Nat'l Rifle Assoc. of Am. v. Cuomo*, 480 F. Supp.3d 404, 411 (N.D.N.Y. 2020) (quoting *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 541 (S.D.N.Y. 2006) (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997))). "An organization cannot manufacture injury in fact by bootstrapping the expenditure of resources on the lawsuit in which it alleges that it has standing." *Id*. (quoting *Doe*, 462 F. Supp. 2d at 541). "In other words, an organization must show 'concrete and demonstrable injury to the organization's activities,' as opposed to a mere 'setback to the organization's abstract social interests.'" *Id*. (quoting *Natural Res. Defense Council, Inc. v. Wheeler*, 367 F. Supp. 3d 219, 229 (S.D.N.Y. 2019) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982))).

Further, an organization seeking injunctive relief "must carry the burden of establishing that [it] has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *Juvenile Matters Trial Lawyers Ass'n*, 363 F. Supp. 2d at 245 (quoting *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)). "Abstract injury is not enough; rather, the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Id*. (internal quotation marks omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983). An organization "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [it] . . . will be injured in the future." *Id*. (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)).

NAGR advances a theory of injury-in-fact based on an allegation that it has "diverted resources otherwise reserved for different institutional functions and purposes." (Doc. #26 at 2-3,

¶2.)  However, NAGR's only allegation about what it has diverted resources to fund, is telling. "[T]he Defendants' unconstitutional enforcement of the laws complained of herein has forced, or likely will force, NAGR to divert funds, energies, and resources to the cause of *this legal action*." (Id.) (emphasis added).  As shown below, these allegations are insufficient for several reasons.

### 1.    NAGR cannot demonstrate injury by claiming a diversion of resources related to this very lawsuit.

Courts within this Circuit have repeatedly rejected claims by organizations based on depletion of resources claims even more detailed and arguably more concrete than that of NAGR. *See NRA of Am.,* 480 F. Supp. 3d at 415 (rejecting claim of organizational standing as "futile" based on alleged injuries of dedication of "staff and resources to fielding . . . calls and providing advice to its members."); *Rodriguez*, 444 F. Supp. 3d at 495 (holding association of journalists lacked organizational standing based on alleged expenditure of time and resources where association failed to provide specifics as to how defendants' alleged conduct caused any perceptible impairment or even any adverse effect to association's ordinary advocacy operations).[1]

Recently, the Second Circuit found no organizational standing based on an almost identical diversion of resources theory.  In *Connecticut Parents Union*, an organizational plaintiff brought a declaratory and injunctive relief action against state officials pursuant to §1983 asserting that Connecticut's statewide racial quota for inter district magnet schools (Public Act 17-172) violated

---

[1] *See also Ctr. for Food Safety v. Price*, No. 17-CV-3833 (VSB), 2018 WL 4356730, at *5 (S.D.N.Y. Sept. 12, 2018) (rejecting food safety organization's "depletion of resources" theory because the "purported injuries are not sufficiently distinct from the general mission of the organizations at issue . . . to allow standing based on these allegations alone would mean that any entity that spends money on an issue of particular interest to it would have standing, which would in turn contravene the principle that an entity's mere interest in a problem cannot support standing."); *NCPRR v. City of New York*, 75 F.Supp.2d 154 (S.D.N.Y. 1999) (holding no standing based on civil rights groups claim that it "expends substantial resources . . . to advocate reforms to end police misconduct").

the Equal Protection Clause. *Conn. Parents Union,* 8 F.4th at 170.  The plaintiff was CTPU, an organization whose mission was "to ensure that parents, guardians, and families are connected with the educational resources and support system necessary to protect their children's educational rights thus ensuring that neither race, zip-code, nor socio-economic status is a predictor of a child's success." *Id.* at 170-71.  CTPU contested the alleged racial quota by "hosting community events, information sessions, bus tours, and other events in order to educate the public about the statewide racial quota's harmful effects and leading legislative-reform efforts to repeal the racial quota." *Id.* at 171. CTPU alleged that its "attempts to counteract the statewide quota . . . have 'prevented [it] from devoting [its] time and energies to other . . . matters,' imposing 'opportunity costs' on the organization.'" *Id.* "CTPU maintain[ed] that its work was perceptibly impaired because it expended resources to counteract illegal activity touching on its core mission and in so doing diverted resources away from other activities." *Id.*

The Second Circuit rejected this, holding under that "argument, an organization could establish standing by claiming to have been injured by any law or regulation touching any issue within the scope of its mission (which the organization itself can define) so long as it expends resources to oppose that law or regulation." *Id.* at 173.  The Court further held "expenditures or other activities, if incurred at the organization's *own initiative*, cannot support a finding of injury— that is, when the expenditures are not reasonably necessary to continue an established core activity of the organization bringing suit, such expenditures, standing alone, are insufficient to establish an injury in fact for standing purposes. In other words, an organization's decision to embark on categorically new activities in response to action by a putative defendant will not ordinarily suffice to show an injury for standing purposes, even if the organization's own clients request the change." *Id.* at 174.

The injury-in-fact inquiry must focus on "*involuntary* and *material* impacts on *core* activities." *Id*. at 175 (emphasis in original). Here, NAGR does not allege what core activities it has been forced to forgo or even curtail as a result of the challenged statutes which have been in place for the better part of a decade. Much like the organization in *Conn. Parents Union*, "it is clear that [NAGR] incurred costs because it decided to initiate a campaign against the [challenged statutes] to advance its own abstract social interests; thus any costs [NAGR] incurred from this campaign were not involuntary." *Id*. Simply put, an organization cannot sue to invalidate a statute and claim the cost of bringing that lawsuit constitutes an injury in fact.[2] As the Supreme Court has observed, "Art. III forecloses the conversion of courts of the United States into judicial versions of college debating forums." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).

For this reason alone, NAGR cannot satisfy its burden to demonstrate standing and it must be dismissed from this lawsuit.

## 2. Even if NAGR could establish injury in fact, it cannot establish causation.

NAGR also fails it burden to establish standing because its alleged injury is not "fairly traceable to [the challenged statutes]." *Conn. Parents Union*, 8 F.4th at 173. Here, NAGR's

---

[2] *See also Young Advocates for Fair Educ. v. Cuomo*, 359 F. Supp. 3d 215 (E.D.N.Y. 2019) ("If any plaintiff with a strong objection to a statute could manufacture standing by spending time and money opposing that very statute—and then arguing that the expenditure of that time and money was itself an injury—there would be no real constraint upon standing at all, except perhaps the size of the plaintiff's bank account."); *Mental Hygiene Legal Service v. Cuomo*, 13 F.Supp.3d 289, 299 (S.D.N.Y. 2014) (finding a lack of standing where plaintiff "ha[d] not indicated that its activities [opposing the law] detracted the attention of [its] staff members from their regular tasks"); *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 78 (3d Cir. 1998) (finding a lack of standing where "[t]he record [did] not establish that the [plaintiff] altered its operations in any way as a result of the allegedly discriminatory advertisements or diverted any of its resources to a bona fide investigation"); *National Taxpayers Union, Inc. v. U.S.*, 68 F.3d 1428, 1434 (D.C. Cir. 1995) ("The impact of Section 13208 upon [plaintiff's] programs, such as its educational and legislative initiatives, also does not constitute an injury in fact.").

alleged injury—diversion of resources to cover the cost of this lawsuit—stems not from the challenged statutes, but its own decision to sue.

Chief Judge Underhill ruled on this prong of the test in *Conn. Parents Union*, holding that though the plaintiff made allegations of "expenditure of resources," the "complaint pleads no facts showing how the Act compelled CTPU to forgo those activities. . . ."[3]  *Conn. Parents Union v. Wentzell,* 462 F. Supp. 3d 167, 172 (D. Conn. 2020).  The court held that the causation requirement was not satisfied.  *Id*. at 173.  Specifically, the court held that "[c]ausation is not met when a plaintiff's injury arises from 'the independent action of some third party.'"  *Id*. (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

The court recognized the "relatively modest" burden to show causation, but found "that burden is harder to meet where, 'traceability depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict.'"  *Id*.  (quoting *New York v. United States Dep't of Commerce*, 315 F. Supp. 3d 766, 785 (S.D.N.Y. 2018)); *see also Lujan*, 504 U.S. at 562 ("[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish.").  There, "it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation." *Lujan*, 504 U.S. at 562; *see also Bennett*

---

[3] The Second Circuit ultimately did not address the causation or "traceability" issue because both parties agreed  "that our standing inquiry here turns principally on the first element: injury-in-fact."  *Conn. Parents Union*, 8 F.4th at 173 n.19.  The Court stated "[t]he connection between injury and causation is particularly close where, as here, the plaintiff is not the object of the challenged legislation and is therefore not under any direct physical or legal compulsion that would require it to incur costs constituting an injury. But here, because we conclude that CTPU fails to demonstrate injury-in-fact, consideration of the injury prong is sufficient to resolve the dispute before us."  *Id*.

*v. Spear*, 520 U.S. 154, 169 (1997) (concluding that a party may meet the standing requirement if it suffered an "injury produced by determinative or coercive effect upon the action of someone else").

Chief Judge Underhill concluded that CTPU did not carry its burden.  "CTPU is not the object of the Act, and the complaint does not allege that parents whose children were impacted by the Act were forced to seek assistance from CTPU.  Nor does the complaint proffer any facts showing that the parents' calls 'coerc[ed]' or otherwise compelled CTPU to expend resources to oppose the Act.  CTPU was free to decline the parents' requests at no cost to the organization; that it opted to do otherwise does not grant it standing." *Conn. Parents Union*, 462 F. Supp. 3d at 174 (quoting *Bennett*, 520 U.S. at 169).

Similarly, NAGR claims the expense of this lawsuit constitutes an opportunity cost.  But there is nothing compelling NAGR to bring this lawsuit as opposed to engaging in its core functions.  Much like CTPU, NAGR is free to decline spending its time and money attempting to invalidate state statutes via the federal courts.  They are not required to divert resources from whatever alternative actions they would be taking—the Second Amended Complaint does not specify—to expend the resources necessary to sue the State.  NAGR chooses to do this, but voluntarily choosing to engage in this activity cannot confer standing.  *See Young Advocates*, 359 F. Supp. 3d at 231 ("Individual persons cannot obtain judicial review of otherwise non-justiciable claims simply by incorporating, drafting a mission statement, and then suing on behalf of the newly formed and extremely interested organization.") (quoting *National Treasury Employees Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996)).

For this reason, even if NAGR could establish an injury-in-fact, it cannot satisfy the causation prong of the standing test, and therefore must be dismissed from this case.

III.    **CONCLUSION**

The Article III "standing requirement assures that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party; where that need does not exist, allowing courts to oversee legislative or executive action would significantly alter the allocation of power away from a democratic form of government." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his [or her] advocacy." *Valley Forge*, 454 U.S. at 486. A special interest group does not have the right to challenge a state statute in federal court simply because it objects to its impact upon its members on general policy grounds. Such advocacy is better left to the political process, and utilization of the organization's resources does not constitute an injury sufficient to invoke the jurisdiction of this Court. NAGR has not met its burden to establish either associational or organizational standing. It must therefore be dismissed from this case. The Court should grant this Motion.

DEFENDANT
Lamont, et. al.

WILLIAM TONG
ATTORNEY GENERAL

BY:  _____

James M. Belforti
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Tel:  (860) 808-5450
Fax:  (860) 808-5591
Federal Bar No. ct30449
E-Mail:  james.belforti@ct.gov

15

*/s/ Janelle R. Medeiros*

Janelle R. Medeiros
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct30514
E-Mail:  janelle.medeiros@ct.gov
Tel.:  (860) 808-5450
Fax:  (860) 808-5590

### CERTIFICATION

I hereby certify that on November 18, 2022, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

_____

James M. Belforti
Assistant Attorney General

16