**Exhibit 1**
**Detailed Analysis of Ten Laws Cited by State**

1.  **1837 Ala. Laws 7, No. 11, § 2**

    Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened, That if any person carrying any knife or weapon, known as Bowie Knives or Arkansaw [sic] Tooth-picks, or either or any knife or weapon that shall in form, shape or size, resemble a Bowie-Knife or Arkansaw [sic] Tooth-pick, on a sudden rencounter, shall cut or stab another with such knife, by reason of which he dies, it shall be adjudged murder, and the offender shall suffer the same as if the killing had been by malice aforethought. And be it further enacted, [t]hat for every such weapon, sold or given, or otherwise disposed of in this State, the person selling, giving or disposing of the same, shall pay a tax of one hundred dollars, to be paid into the county Treasury; and if any person so selling, giving or disposing of such weapon, shall fail to give in the same to his list of taxable property, he shall be subject to the pains and penalties of perjury.

    This law is not "relevantly similar" to the challenged laws. *Bruen*, 142 S. Ct. at 2133. The law has two parts. The main part creates a presumption of malice for the illegal use of a dangerous and unusual weapon. This is in no way analogous to a complete ban on possession of a weapon in common use.

    The second part of the law is also not relevantly similar to the challenged law. It imposes a tax on the sale of dangerous and unusual weapons. This tax is analogous to taxes on dangerous and unusual weapons today. *See, e.g.*, 26 U.S.C.A. § 5811 (imposing a tax on the transfer of machineguns). But a tax on the transfer of dangerous and unusual weapons is not analogous to the State's law, which makes it illegal to sell, make, or possess an arm in common use. This law has no application here.

2.  **1837 Ga. Laws 90, § 1**

    . . . it shall not be lawful for any merchant, or vender of wares or merchandize in this State, or any other person or persons whatsoever, to sell, or offer to sell, or to keep, or to have about their person or elsewhere, any of the hereinafter described weapons, to wit: Bowie, or any other kinds of knives, manufactured and sold for the purpose of wearing, or carrying the same as arms of offence or defense, pistols, dirks, sword canes, spears,

&c., shall also be contemplated in this act, save such pistols as are known and used as horseman's pistols, &c.

This law was held unconstitutional under the Second Amendment in *Nunn v. State*, 1 Ga. 243 (1846). *Bruen* called *Nunn* "particularly instructive." *Id.*, 142 S. Ct. at 2147. *Heller* said the "opinion perfectly captured the way in which the operative clause of the Second Amendment furthers the purpose announced in the prefatory clause, in continuity with the English right." *Id.*, 554 U.S. at 612.

This law is also not "relevantly similar" to the challenged laws. *Bruen*, 142 S. Ct. at 2133. As limited by *Nunn*, it merely prohibited concealed carry. As set forth in the brief, under *Heller*, laws against concealed carry are not analogous to laws, such as the State's law challenged here, that prohibit possession of commonly held arms.

3.   **1837-1838 Tenn. Pub. Acts 200-01, §§ 1–2**

§ 1. That if any merchant, . . . shall sell, or offer to sell . . . any Bowie knife or knives, or Arkansas tooth picks . . . such merchant shall be guilty of a misdemeanor, and upon conviction thereof upon indictment or presentment, shall be fined in a sum not less than one hundred dollars, nor more than five hundred dollars, and shall be imprisoned in the county jail for a period not less than one month nor more than six months.

§ 2. That if any person shall wear any Bowie knife, Arkansas tooth pick, or other knife or weapon that shall in form, shape or size resemble a Bowie knife or Arkansas toothpick under his clothes, or keep the same concealed about his person, such person shall be guilty of a misdemeanor, and upon conviction thereof shall be fined in a sum not less than two hundred dollars, nor more than five hundred dollars, and shall be imprisoned in the county jail not less than three months and not more than six months.

Section one of the law is an historical outlier, as one of the few that banned all sales of Bowie knives, rather than merely regulating their method of carry or imposing a tax on them.

Section two of the law is not "relevantly similar" to the challenged laws. *Bruen*, 142 S. Ct. at 2133. It merely prohibited concealed carry. As set forth in the brief, under *Heller*, laws

against concealed carry are not analogous to laws, such as the State's law challenged here, that prohibit possession of commonly held arms.

Neither section is "relevantly similar" to the challenged laws. *Bruen*, 142 S. Ct. at 2133. Both this historical law targeted "dangerous and unusual weapons," the regulation of which did not impact the right to possess and use arms "that are in common use at the time." *Id.*, 142 S. Ct. at 2128 (quotations omitted). The arms banned by the State today are in common use, so these laws have no application here.

**4.      1838 Fla. Laws 36, No. 24, § 1**

> Be it enacted by the Governor and Legislative Council of the Territory of Florida, That from and after the passage of this act, it shall not be lawful for any person or persons in this Territory to vend dirks, pocket pistols, sword canes, or bowie knives, until he or they shall have first paid to the treasurer of the county in which he or they intend to vend weapons, a tax of two hundred dollars per annum, and all persons carrying said weapons openly shall pay to the officer aforesaid a tax of ten dollars per annum; and it shall be the duty of said officer to give the parties so paying a written certificate, stating that they have complied with the provisions of this act. Four fifths of all monies so collected to be applied by the county courts to county purposes, the other fifth to be paid to the prosecuting attorney.

Florida was a territory in 1838. Territorial laws like this one "were rarely subject to judicial scrutiny" and applied only to "miniscule territorial populations" but would have been "irrelevant to more than 99% of the American population." *Id.*, 142 S. Ct. at 2154–55. Accordingly, such territorial laws are not relevant to the constitutional analysis.

The law is not "relevantly similar" to the challenged laws. *Bruen*, 142 S. Ct. at 2133. The law imposes a tax on the sale of dangerous and unusual weapons. This tax is analogous to taxes on dangerous and unusual weapons today. *See, e.g.*, 26 U.S.C.A. § 5811 (imposing a tax on the transfer of machineguns). But a tax on the transfer of dangerous and unusual weapons is not analogous to the State's law, which makes it illegal to sell, make or possess an arm in common use.

The law is also not relevantly similar to the State's law because it merely imposes a tax on the open carry of the weapons. Such a regulation specifically contemplates that the possession and open carry of the weapons are legal, unlike the State's law which prohibits the possession and carry of arms that are in common use.

The law is also not relevantly similar because it targeted "dangerous and unusual weapons," the regulation of which did not impact the right to possess and use arms "that are in common use at the time." *Id.*, 142 S. Ct. at 2128 (quotations omitted). The arms banned by the State today are in common use, so these laws have no application here.

5.     **1838 Va. Acts 76, ch. 101, § 1**

>Be it enacted by the general assembly, That if any person shall hereafter habitually or generally keep or carry about his person any pistol, dirk, bowie knife, or any other weapon of the like kind, from this use of which the death of any person might probably ensue, and the same be hidden or concealed from common observation, and he be thereof convicted, he shall for every such offense forfeit and pay the sum of not less than fifty dollars nor more than five hundred dollars, or be imprisoned in the common jail for a term not less than one month nor more than six months, and in each instance at the discretion of the jury; and a moiety of the penalty recovered in any prosecution under this act, shall be given to any person who may voluntarily institute the same.

The law is not "relevantly similar" to the challenged laws. *Bruen*, 142 S. Ct. at 2133. It merely prohibited concealed carry. As set forth in the brief, under *Heller*, laws against concealed carry are not analogous to laws, such as the State's law challenged here, that prohibit possession of commonly held arms.

6.     **1839 Ala. Acts 67, ch. 77**

>That if any person shall carry concealed about his person any species of fire arms, or any bowie knife, Arkansas tooth-pick, or any other knife of the like kind, dirk, or any other deadly weapon, the person so offending shall, on conviction thereof, before any court having competent jurisdiction, pay a fine not less than fifty, nor more than five hundred dollars, to be assessed by the jury trying the case; and be imprisoned for a term not exceeding three months, at the discretion of the Judge of said court.

4

The law is not "relevantly similar" to the challenged laws. *Bruen*, 142 S. Ct. at 2133. It merely prohibited concealed carry. As set forth in the brief, under *Heller*, laws against concealed carry are not analogous to laws, such as the State's law challenged here, that prohibit possession of commonly held arms.

The law is also not relevantly similar because it targeted "dangerous and unusual weapons," the regulation of which did not impact the right to possess and use arms "that are in common use at the time." *Id.*, 142 S. Ct. at 2128 (quotations omitted). The arms banned by the State today are in common use, so these laws have no application here.

7.    **1858-1859 N.C. Sess. Laws 34-36, Pub. Laws., ch. 25, § 27, pt. 15**

The following subjects shall be annually listed, and be taxed the amounts specified: . . . Every dirk, bowie-knife, pistol, sword-cane, dirk-cane and rifle cane, used or worn about the person of any one at any time during the year, one dollar and twenty-five cents. Arms used for mustering shall be exempt from taxation.

The law is not "relevantly similar" to the challenged laws. *Bruen*, 142 S. Ct. at 2133. The law imposes a tax on the carry of dangerous and unusual weapons. This tax is analogous to taxes on dangerous and unusual weapons today. *See, e.g.*, 26 U.S.C.A. § 5811 (imposing a tax on the transfer of machineguns). But a tax on the transfer of dangerous and unusual weapons is not analogous to the State's law, which makes it illegal to sell, make or possess an arm in common use.

The law is also not to the challenged laws, because it merely imposes a tax on the carry of the weapons. Such a regulation specifically contemplates that the possession and carry of the weapons are legal, unlike the State's law which prohibits the possession and carry of arms that are in common use.

The law is also not relevantly similar to the challenged law because it targeted "dangerous and unusual weapons," the regulation of which did not impact the right to possess

5

and use arms "that are in common use at the time." *Id.*, 142 S. Ct. at 2128 (quotations omitted). The arms banned by the State today are in common use, so these laws have no application here.

**8.     1868 Ala. Laws 11 [Wade Keyes, The Code of Alabama, 1876, ch. 3, § 4111 (Act of Aug. 5, 1868, at 1]**

> To prevent the carrying of hostile deadly weapons, known as Rifle Walking Canes, or Gunshot Canes. …That any person who shall carry 'rifle' walking canes, or 'gunshot' walking canes, shall upon conviction be fined not less than five hundred dollars, nor more than one thousand dollars, and be imprisoned in the Penitentiary not less than two years.

This law comes too late to shed much light on the scope of the Second Amendment. "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137.

The law is also not relevantly similar because it targeted "dangerous and unusual weapons" (rifle or shotgun disguised as a walking cane), the regulation of which did not impact the right to possess and use arms "that are in common use at the time." *Id.*, 142 S. Ct. at 2128 (quotations omitted). The arms banned by the State today are in common use, so these laws have no application here.

The law is not "relevantly similar" to the challenged laws. *Bruen*, 142 S. Ct. at 2133. It is, in effect, a prohibition on concealed carry (disguised weapons). As set forth in the brief, under *Heller*, laws against concealed carry are not analogous to laws, such as the State's law challenged here, that prohibit possession of commonly held arms.

**9.     1868 Fla. Laws 95, ch. 7, § 11**

> Whoever manufactures, or causes to be manufactured, or sells or exposes for sale any instrument or weapon of the kind usually known as slung-shot, or metallic knuckles, shall be punished by imprisonment not exceeding six months, or by fine not exceeding one hundred dollars.

6

This law comes too late to shed much light on the scope of the Second Amendment. "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources.'" *Bruen*, 142 S. Ct. at 2137.

The law is also not relevantly similar because it targeted "dangerous and unusual weapons," the regulation of which did not impact the right to possess and use arms "that are in common use at the time." *Id.*, 142 S. Ct. at 2128 (quotations omitted). The arms banned by the State today are in common use, so these laws have no application here.

### 10. 1850 Mass. Gen. Law, ch. 194 § 2, as codified in Mass. Gen. Stat., chap. 164 (1873) § 11

Whoever manufactures, or causes to be manufactured, or sells, or exposes for sale, any instrument or weapon of the kind usually known as slung shot, or metallic knuckles, shall be punished by fine not less than fifty dollars, or by imprisonment in the jail not exceeding six months.

The law is also not relevantly similar because it targeted "dangerous and unusual weapons," the regulation of which did not impact the right to possess and use arms "that are in common use at the time." *Id.*, 142 S. Ct. at 2128 (quotations omitted). The arms banned by the State today are in common use, so these laws have no application here.